UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RHONDA L. CISNEROS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | No. EDCV 09-2319 AJW <br><br> MEMORANDUM OF <br> DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), granting in part and denying in part plaintiff's application for Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed. [See JS 2]. Plaintiff alleges that she became disabled on September 30, 2001, due to migraine headaches, back pain, depression, and memory loss.[JS 1-2]. After a hearing, an administrative law judge (the "ALJ") found plaintiff not disabled, and the Appeals Council denied review. [JS 2]. Plaintiff filed an action for judicial review.

On November 26, 2008, an order and judgment were issued reversing the denial of benefits and remanding the case for further administrative proceedings. [See Administrative Record

("AR") 570-584]. In that order, the Court credited as a matter of law the April 8, 2003 opinion of Dr. Fredman, an examining psychiatrist [AR 119-122], and the May 1, 2003 opinion of Dr. Ching, a nonexamining psychiatrist. [AR 138-151, 571-574]. The Court further held that in light of those medical opinions, the ALJ's RFC finding and the vocational expert's testimony, on which the ALJ's step-five finding was based, no longer reflected all of the work-related limitations that were supported by the record. [AR 582-584]. Accordingly, the Court remanded the case for further administrative proceedings consistent with that order. [See AR 582-584]. On December 22, 2008, the Appeals Council issued an order remanding the matter to the same ALJ for further proceedings.[1] [AR 586].

On September 8, 2009, the ALJ issued a partially favorable written hearing decision on remand. The ALJ concluded that plaintiff was disabled from November 8, 2002 through January 31, 2007. [AR 475-488]. The ALJ, however, found as of February 1, 2007, medical improvement occurred that was related to plaintiff's ability to work and enabled her to perform a limited range of light work. [AR 481]. The ALJ concluded that plaintiff was not disabled beginning on February 1, 2007 because, as of that date, her RFC did not preclude her from performing a significant number of jobs available in the national economy. [AR 487]. The ALJ's hearing decision on remand is the Commissioner's final decision in this case.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and

---

[1] The record includes a "Notice of Order of Appeals Council Remanding Case to Administrative Law Judge" [AR 586], but the Appeals Council's order is not appended to that notice and appears to be omitted from the record.

to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical improvement**

Plaintiff contends that the ALJ's conclusion that she was not disabled as of February 1, 2007 due to medical improvement is not based on substantial evidence in the record. More particularly, plaintiff argues that the medical opinions that were credited as a matter of law pursuant to the Court's remand order are not contradicted by substantial evidence and remain controlling with respect to the period beginning on February 1, 2007. [JS 4-9].

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985); Mendoza v. Apfel, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000). Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983). Although the claimant retains the burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence to meet or rebut the presumption. See Bellamy, 755 F.2d at 1381.

"Medical improvement" is defined as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

1   20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

2         To determine whether the medical improvement is related to the ability to work, the Commissioner will compare the claimant's residual functional capacity ("RFC") at the time of the most recent favorable decision with a current RFC based on only those impairments which were present at the time eligibility was most recently approved. Once medical improvement is found to be related to a beneficiary's ability to work, the analysis proceeds to the next step. If the Commissioner finds that the claimant's condition has medically improved and that the improvement is related to his ability to work, the Commissioner will apply the sequential evaluation procedure to determine whether these may, nonetheless, preclude substantial gainful activity. The severity of all current impairments must be analyzed, plaintiff's RFC must be assessed based on all current impairments, and the issues whether or not a claimant is capable of past relevant work and whether a claimant, considering age, education and work experience, can do other work, must be considered. See 20 C.F.R. §§ 404.1594(a),(b)(5); 416.994(a),(b)(5); see generally 20 C.F.R. §§ 404.1594(f).

      In finding that plaintiff's period of disability lasted through January 31, 2007, the ALJ "rel[ied] in part on the [2003] opinions of Dr. Fredman and Dr. Ching," which he was obliged to credit pursuant to the remand order. [AR 479, 582]. The ALJ also relied "on the fact that during this time frame, the claimant was hospitalized for mental reasons on three separate occasions," with "her last such hospitalization [having] occurred in December 2006."[2] [AR 481; see AR 359-392]. The ALJ found that plaintiff's RFC during her period of disability precluded her, among other things, from performing even simple, repetitive tasks; interacting appropriately with the public; performing high-quota production rate pace work; performing safety operations; and performing work requiring hypervigilance. [AR 479].

      The ALJ's reasons for finding that medical improvement occurred as of February 1, 2007 are not legitimate and are not based on substantial evidence in the record. The ALJ reasoned that plaintiff's December 2006 hospitalization was "situational," and "isolated," and therefore not

---

[2] Plaintiff had prior psychiatric hospitalizations in January 2005 and April 2005. [See AR 155-165, 172-173, 574-575

- 4 -

probative of continuing disability, because plaintiff "reported to health care workers that she was depressed because of the holiday season" and was not hospitalized during subsequent holiday seasons in 2007 or 2008. [AR 482].

Plaintiff was involuntarily hospitalized at Riverside County Regional Medical Center in Moreno Valley, California on December 16, 2006, pursuant to California Welfare and Institutions Code section 5150.[3] Plaintiff reported that she was depressed and suicidal. [See AR 359-411]. Plaintiff said that she was "very depressed because of the holiday season" [AR 359], and that the holidays are a "bad time for [her]." [AR 359, 367]. She was diagnosed with bipolar II disorder, prescribed medication, and discharged to her mother's care the following day. [AR 359-392, 576-577].

Plaintiff told her care-givers that she was depressed because of the holidays, but she did not say that her depression was isolated or merely a seasonal disorder. The ALJ's conclusion that plaintiff had been disabled for the previous four years makes it abundantly clear that was not the case. Furthermore, plaintiff's December 2006 inpatient stay can hardly be considered an isolated occurrence when it was her third psychiatric hospitalization in a two-year period. [See AR 482]. In addition, a suicidal mental patient's subjective assessment of her condition is not a "symptom," "sign," or "laboratory finding" warranting a finding of medical improvement. See 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i); cf. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness.").

---

[3] California Welfare and Institutions Code § 5150 states, in pertinent part:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, . . . or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

1    The ALJ also reasoned that plaintiff's "level of functioning had improved over time . . .
2 to the point in mid-to-late 2006 where the December 2006 hospitalization represented a temporary
3 setback; and . . . within 30 days, she had either achieved or returned to a level of functioning which
4 was capable of full-time sustained employment." [AR 482]. The ALJ concluded that plaintiff's
5 condition had been improving because she started receiving regular mental health treatment in
6 approximately April 2006, and because a consultative medical examination conducted that same
7 month indicated a "significant improvement" in plaintiff's condition compared to the previous
8 consultative examination in April 2003. [AR 482 (citing AR 238-248, 717)].

9    The evidence of improvement cited by the ALJ is a one-page progress note from Riverside
10 County Department of Mental Health ("County Mental Health") with three entries from March
11 2006 and April 2006 describing plaintiff's request for records to support her disability benefits
12 claim and how staff members were following up on that request. [AR 482, 717]. That note does
13 not show medical improvement in plaintiff's condition.

14    Testimonial and documentary evidence in the record indicate that plaintiff actually began
15 receiving regular mental health treatment at County Mental Health clinics beginning in early 2005,
16 after her psychiatric hospitalizations, and continued to do so through the date of the administrative
17 hearing in April 2009.  Plaintiff was prescribed antipsychotic and antidepressant medications,
18 including Seroquel (quietapine), Depakote (valproic acid), Klonopin (clonzaepam) and Lexapro
19 (escitalopram), and received one-on-one therapy. The diagnoses reflected in those reports include
20 major depressive disorder, bipolar disorder, mood disorder not otherwise specified, post-traumatic
21 stress disorder, and agoraphobia. [See AR 108, 154-180, 657, 684-780, 790-794, 834-839].

22    The mere fact that plaintiff was receiving regular mental health treatment does not amount
23 to evidence that her condition had medically improved to the point that she was no longer disabled
24 at the end of January 2007, especially since she was hospitalized in December 2006
25 notwithstanding ongoing treatment. The ALJ cited treatment notes dated after January 31, 2007
26 showing that while plaintiff "continues to have issues with her living situation and with family
27 members, the mental status examinations have been generally within normal limits." [AR 482
28 (citing AR 737-738, 741, 745)]. However, the ALJ did not mention other treatment notes and

1    assessments from 2007 and 2008 reflecting significant ongoing symptomatology. For example,
2    an "Adult Re-Assessment/Care Plan" dated January 28, 2008 included the following findings:
3    plaintiff exhibited depressed and anxious mood, reduced interest, feelings of worthless and guilt,
4    decreased ability to concentrate, fatigue, excessive anxiety, fear of losing control, restlessness,
5    irritability. [AR 748-753]. Plaintiff was given a Global Assessment of Function score of 40 [AR
6    748], denoting a major impairment in several areas, such as work or school, family relations,
7    judgment, thinking, or mood. See American Psychiatric Association, Diagnostic and Statistical
8    Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev.
9    2000).  Treatment notes from mid-to-late 2008 indicate a worsening of plaintiff's symptoms of
10   depression, anxiety, and irritability. [See AR 764-779; e.g., AR 770 (noting that plaintiff was
11   "very irritable" with increased depression and anxiety, poor sleep, poor concentration, and feelings
12   of hopelessness)].

13         The ALJ minimized the significance of the 2008 records, saying that "while [plaintiff] has
14   symptoms of depression and anxiety, she is able to control the symptoms such that she has not
15   experienced such acute symptoms as she has in the past. Thus, her condition has clearly
16   improved." [AR 482]. Plaintiff's symptoms may have become less acute with treatment, or less
17   acute *at times,* but that is not tantamount to regaining the ability to work. The optimistic inferences
18   the ALJ drew about plaintiff's recovery within 30 days after the December 2006 incident depend
19   on a selective reading of the treating source evidence rather than on the record as a whole.

20         The ALJ also cited a consultative examination report from Dr. Reznick as evidence of
21   significant improvement in plaintiff's mental functional capacity. Dr. Reznick evaluated plaintiff
22   at the Commissioner's request in April 2006. He conducted an interview, reviewed medical
23   records, performed a mental status examination, and administered testing. Dr. Reznick said that
24   plaintiff presented with some signs and symptoms of depression. However, he believed that she
25   exaggerated her symptoms and made a sub-optimal effort during the examination. He diagnosed
26   a mood disorder not otherwise specified and a personality disorder not otherwise specified, and
27   he opined that plaintiff could perform at least simple, repetitive tasks. [AR 238-248].

28         Significantly, the ALJ did not adopt Dr. Reznick's nondisability opinion. To the contrary,

the ALJ found that plaintiff was still disabled in April 2006 and remained so until February 2007. This is unsurprising considering that plaintiff was involuntarily admitted to a psychiatric hospital just a few months after Dr. Reznick said that she was exaggerating her symptoms.

Adopting Dr. Reznick's opinion also would be problematic in light of the Court's remand order. Dr. Reznick's report was part of the record before the Court prior to remand. [AR 576]. If the ALJ had given legally sufficient reasons for rejecting the opinions of Drs. Fredman and Ching, Dr. Reznick's opinion could have constituted substantial evidence supporting a finding of nondisability. Since the ALJ did not do so, the Court credited the conflicting opinions of Drs. Fredman and Ching as a matter of law. Crediting Dr. Reznick's April 2006 opinion outright—in the absence of any other contemporaneous substantial evidence of nondisability—would appear to be inconsistent with the Court's remand order.

In light of these considerations, Dr. Reznick's April 2006 opinion is not substantial evidence supporting the ALJ's finding that plaintiff's December 2006 hospitalization was a temporary aberration and that her condition medically improved to the point that she was no longer disabled as of February 1, 2007.

The treating and examining source evidence cited by the ALJ does not constitute substantial evidence of medical improvement showing an ability to work as of February 1, 2007. The ALJ could have, but did not, obtain updated consultative examination reports or elicit testimony from a medical expert to establish medical improvement. Accordingly, the ALJ did not satisfy his obligation to identify evidence in the record sufficient to meet or rebut the presumption of continuing nondisability. See Bellamy, 755 F.2d at 1381.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). "[I]n the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy,

1  even though the vocational expert did not address the precise work limitations established by the
2  improperly discredited testimony, remand for an immediate award of benefits is appropriate. In
3  this case, remanding for further administrative proceedings would serve no useful purpose and
4  would unnecessarily extend Benecke's long wait for benefits." Benecke v. Barnhart, 379 F.3d 587,
5  595 (9th Cir. 2000).

   The appropriate remedy is reversal of the Commissioner's decision finding plaintiff not disabled due to medical improvement beginning on February 1, 2007 and remand of this case for an award of benefits because the ALJ failed to identify sufficient evidence in the record rebutting the presumption of continuing nondisability.[4]

### Conclusion

For the reasons described above, the Commissioner's decision is **affirmed in part** (as to the decision that plaintiff was disabled and entitled to an award benefits for the period from November 8, 2002 through January 31, 2007) and **reversed in part and remanded** to the Commissioner for an award of benefits (as to the decision that plaintiff was not disabled due to medical improvement beginning on February 1, 2007).

**IT IS SO ORDERED.**

December 14, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[4] This disposition makes it unnecessary to consider plaintiff's additional contention that the ALJ improperly assessed the credibility of her subjective complaints.

- 9 -